**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

**CHRISTINA ELWELL, ET AL.,**

                         **Petitioners,**

       **- against -**

**RAYMOND JAMES FINANCIAL SERVICES,**
**INC., ET AL.,**

                     **Respondents.**
────────────────────────────────────

**22-cv-10125 (JGK)**

**OPINION & ORDER**

**JOHN G. KOELTL, District Judge:**

The petitioners demanded tens of millions of dollars from the respondents before an arbitration panel of the Financial Industry Regulatory Authority ("FINRA"). The arbitrators awarded the petitioners compensatory damages of $67,917, plus pre-award interest of around $42,000. See ECF No. 1-15 (the "Award"). The petitioners then petitioned the New York State Supreme Court to vacate the Award as baseless and irrational, and the respondents removed the action to this Court based on diversity of citizenship jurisdiction. Not. of Removal, ECF No. 1.

The petitioners now move to remand the action to state court for lack of subject-matter jurisdiction. ECF No. 4. They argue that the amount in controversy falls below the statutory threshold of in excess of $75,000. See 28 U.S.C. § 1332(a). In the event there is subject-matter jurisdiction, the parties also cross-petition to confirm and to vacate the Award. ECF No. 1-2

(petitioners' petition to vacate); ECF No. 13 (respondents'
cross-motion to confirm).

For the following reasons, the petitioners' motion to
remand is **denied**, their petition to vacate is **denied**, and the
respondents' cross-motion to confirm is **granted**.

**I.**

The following facts, which are undisputed unless otherwise
noted, are drawn principally from the Elwells' petition to
vacate the Award. ECF No. 1-2 ("Pet."). The Court also draws
from the evidentiary record where appropriate for the sole,
limited purpose of "discerning whether a colorable basis exists
for the panel's award so as to assure that the award cannot be
said to be the result of the panel's manifest disregard of the
law." <u>Wallace v. Buttar</u>, 378 F.3d 182, 193 (2d Cir. 2004).[1]

For more than 15 years, respondent Daniel Pimental served
as a financial advisor and broker for petitioners Christina and
Erik Elwell, a married couple who live in New York City. Pet.
¶ 7. From 2009 to 2015, Pimental worked for respondent Raymond
James Financial Services ("Raymond James"), where Pimental ran
investment accounts for the Elwells. <u>Id.</u> In January 2020, the
Elwells initiated a FINRA arbitration proceeding against

---

[1] Unless otherwise noted, this Opinion & Order omits all
alterations, citations, footnotes, and internal quotation marks in quoted
text.

Pimental and Raymond James. Id. ¶ 6.[2] The Elwells alleged that Pimental engaged in various misconduct at Raymond James, including breaches of fiduciary duty, churning and excessive trading of the Elwells' accounts, unsuitable and unauthorized trading, charging excessive fees, and fraud. Id. ¶ 8. The Elwells also alleged that Raymond James was vicariously liable for Pimental's misconduct and failed to supervise him adequately. Id. According to the Elwells, "[u]ntil October 2019, the Elwells remained unaware of both the inappropriate investment approach and of Pimental's unauthorized trading." Amended Statement of Claim, Sullivan Decl., Ex. A, ECF No. 14-1, ¶ 52.

Between October 5, 2021, and August 17, 2022, a three-member panel of FINRA arbitrators heard testimony from sixteen witnesses and reviewed 898 exhibits in evidence. See Award at 3; Sullivan Decl., ECF No. 14, ¶¶ 15-17. The Elwells sought damages in the tens of millions of dollars using variants of the "well-managed portfolio" model, which measures the "difference between what the claimant's account made or lost versus what a well-managed account, given the investor's objectives, would have

---

[2] Two other respondents, Wells Fargo Advisors Financial Network, LLC, and Wells Fargo Clearing Services, LLC, were named in the Amended Statement of Claim (the FINRA arbitration equivalent of a complaint), but these respondents were dismissed from the arbitration after settling with the Elwells. Pet. ¶ 6 n.1.

made during the same time period." FINRA Arbitrator's Guide, ECF
No. 1-4, at 5; see Pet. ¶ 11. The Elwells asserted that they
suffered damages of between $17,369,453 and $18,376,571 as of
October 29, 2015, when Pimental left Raymond James for another
broker-dealer. Pet. ¶ 12. Because the Elwells allegedly were
deprived of those gains, "and thus the opportunity to continue
investing those funds from October 29, 2015 forward," the
Elwells also provided calculations using the well-managed
portfolio damages model from October 29, 2015 through August
2021, shortly before the arbitration hearing began, which
amounted to alleged total damages of between $34,552,674 and
$37,761,429. Id. Alternatively, the Elwells presented
calculations of interest on the $17,369,453 to $18,376,571 from
October 29, 2015 through August 2021. Id.

The respondents challenged the Elwells' claim that they
knew nothing of Pimental's alleged unauthorized trading. See
Sullivan Decl. ¶ 18. The respondents introduced evidence that
the Elwells signed and submitted to Raymond James documents
stating that their investment objectives included speculation;
that the Elwells had online access to their accounts; that Mr.
Elwell and Pimental regularly communicated; that Raymond James
sent eleven activity letters to the Elwells alerting them to the
activity in their accounts and the commissions generated in
connection with their investments; and that five of these

4

letters were signed by the Elwells and returned to Raymond James. See id.

The respondents also challenged the Elwells' damages calculations. The Elwells' expert, Stuart Ober, had assumed that a "well-managed portfolio account" for the Elwells would have invested in a portfolio of 70-75% S&P 500 index fund and 25-30% Bloomberg Barclays Aggregate Bond Fund. See Sullivan Decl., Ex. I, ECF No. 14-9 ("Hearing Tr."), at pp. 1342-43. The respondents argued that there was no evidence that the Elwells ever wanted these breakdowns of equities and fixed income. See Hearing Tr. at 1697-1702. During the hearing, Ober also conceded that there were suitable investments in the Elwells' accounts; but, when pressed by the FINRA panel, he could not segregate the suitable investments from the allegedly unsuitable ones and acknowledged that he applied his damages formula to every investment to generate the well-managed portfolio models. See id. at 1765-66. At the hearing, one arbitrator challenged this decision, asking Ober the following:

> How does the Panel tell how much of the results in the account came from suitable as opposed to unsuitable trades? Is there anything in the document that would allow us, without grabbing a calculator, to determine what amount of the loss or gain comes from suitable as opposed to unsuitable trades? And I realize that's an awkward question, but it's going to have to do.

Id.

In response, Ober stated that he "would say also added to that would be any trades -- there's not a number, if that's what you're specifically asking." Id. at 1766.

Against Ober's testimony, the respondents' expert, E. Steven Sales, opined that the investments in the Elwells' accounts "were suitable based on all that was known about the client." Id. at 3422. Accordingly, the respondents argued that the Elwells' damages were zero.

On August 26, 2022, the arbitrators signed the Award, which FINRA issued on August 29, 2022. Award at 8. The arbitrators found Pimental and Raymond James jointly and severally liable to the Elwells for Pimental's misconduct, although the Award did not specify which violations the arbitrators found. Id. at 5. After acknowledging that the Elwells "requested compensatory damages ranging from $34,552,674.00 to $37,761,429.00," the arbitrators ordered Raymond James and Pimental to pay the Elwells "$67,917.00 in compensatory damages," plus "interest on the above-stated sum at the rate of 9% per annum from October 21, 2015 through and including the date the award is paid." Id. at 3. Documents in evidence showed that October 21, 2015, was the date the Elwells opened an account at Wells Fargo, Pimental's employer after he left Raymond James. See Sullivan Decl. ¶¶ 13-14; Id., Exs. J, K, ECF Nos. 14-10, 14-11. The

arbitrators also assessed about $60,000 in fees to be paid by the parties directly to FINRA. <u>See</u> Award at 3-5.

FINRA rules required the respondents to pay the Award within 30 days. Pet. ¶ 25. In late September 2022, Pimental and Raymond James each sent the Elwells a check for $55,125.75, representing 50% of a total payment of $110,251.50 in compensatory damages and interest. <u>See</u> Sullivan Decl., ECF No. 7, ¶ 4; Kane Aff., ECF No. 8, ¶ 4. The Elwells cashed the checks "to ensure that they did not become invalid, but remain ready to return the funds upon the award being vacated." Pet. ¶ 25.

On November 4, 2022, the Elwells petitioned the New York State Supreme Court, New York County, to vacate the Award, arguing that it was irrational and without colorable basis in the record and asking the court to "remand the matter to FINRA for further proceedings." <u>Id.</u> ¶ 31. Among other things, the Elwells claimed that the arbitrators improperly rejected the Elwells' damages calculations, did not explain how the $67,917 figure was calculated, and chose a date from which pre-judgment interest would run (October 21, 2015) that "had no specific relevance to any events in the case." <u>Id.</u> ¶¶ 23-24; <u>see also</u> <u>id.</u> ¶ 24 ("[T]he award simply stated an arbitrary amount and date on which interest would accrue, without explanation.").

The respondents timely removed the action to this Court based on diversity of citizenship jurisdiction. <u>See</u> Not. of

Removal. The Elwells now move to remand the action to state court for lack of subject-matter jurisdiction. ECF No. 4. The parties also cross-petition to vacate and to confirm the Award. ECF No. 1-2; ECF No. 13.

## II.

The first issue is whether to remand this action to the New York State Supreme Court.

A federal district court must remand a case that has been removed from state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). A district court has subject-matter jurisdiction over a removed case "only if the case could have been originally filed in federal court." Hernandez v. Conriv Realty Assocs., 116 F.3d 35, 38 (2d Cir. 1997); see 28 U.S.C. § 1441(a). In this case, the respondents, who assert jurisdiction in their notice of removal, bear the burden of establishing the Court's jurisdiction. See United Food & Com. Workers Union, Local 929 v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994).

Sections 9 and 10 of the Federal Arbitration Act ("FAA") empower a federal court to confirm, or alternatively to vacate, an arbitration award. 9 U.S.C. § 9 (confirm); id. § 10 (vacate). However, this statutory authorization does not create federal subject-matter jurisdiction. Badgerow v. Walters, 142 S. Ct.

1310, 1314 (2022). Rather, this Court may consider the cross-petitions to vacate or confirm the Award only if there is an "'independent jurisdictional basis' to resolve the matter[s]," that is, if there is federal question jurisdiction or diversity of citizenship jurisdiction. Id. (quoting Hall St. Assocs. v. Mattel, Inc., 552 U.S. 576, 582 (2008)); see also 28 U.S.C. §§ 1331, 1332.

The respondents removed this case based on diversity of citizenship jurisdiction. Not. of Removal ¶ 6. The Elwells do not contest one predicate for that jurisdictional hook: that there is "complete diversity of citizenship" because each petitioner is a citizen of a different state from each respondent. Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996); see also 28 U.S.C. § 1332(a)(1).[3] But the Elwells do contest the other requirement for diversity of citizenship jurisdiction: that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The Elwells argue that the amount in controversy is $67,917, the compensatory damages awarded by the FINRA arbitrators. Raymond James and Pimental respond that the amount in controversy is at

---

[3] The notice of removal asserts that the Elwells are citizens of New York; Raymond James, a Florida corporation with its principal place of business in Florida, is a Florida citizen; and Pimental is a Massachusetts citizen. Not. of Removal ¶¶ 7-9; see also 28 U.S.C. § 1332(c)(1) (a corporation is a citizen of every state in which it is incorporated and in which it has its "principal place of business").

least $110,251.50 (the total amount paid to satisfy the Award), if not in the tens of millions of dollars (the damages the Elwells demanded in the arbitration).

The Court of Appeals for the Second Circuit has not addressed the correct approach for determining the amount in controversy in proceedings to confirm or vacate arbitration awards. Legacy Agency, Inc. v. Scoffield, 559 F. Supp. 3d 195, 204 (S.D.N.Y. 2021). Courts in this Circuit tend to apply two main approaches. The "demand" approach "construes the amount a party demanded in the underlying arbitration as the amount in controversy," while the "award" approach "construes the amount awarded as the amount in controversy." Id.; see also, e.g., Erdheim v. Harris, No. 10-cv-8601, 2019 WL 3219385, at *2 (S.D.N.Y. July 17, 2019) (collecting cases applying these two approaches).

The respondents' argument that the amount in controversy amounts to tens of millions of dollars -- what the Elwells sought in the arbitration -- follows the demand approach. But the vitality of this approach is questionable following Badgerow, the recent Supreme Court decision. See 142 S. Ct. 1310. The question in Badgerow was whether a federal court should determine its jurisdiction to confirm or vacate an arbitration award by "looking through" the petition "to the underlying substantive controversy between the parties -- even

10

though that controversy is not before the court." Id. at 1314.
Earlier, in Vaden v. Discover Bank, the Supreme Court had held
that this look-through approach was appropriate when assessing
motions to compel arbitration under Section 4 of the FAA. 556
U.S. 49, 62 (2009). In Badgerow, the Court declined to extend
Vaden to petitions under Sections 9 or 10 of the FAA to confirm
or vacate arbitration awards. Badgerow, 142 S. Ct. at 1314.
Instead, when faced with one of these petitions, "a court may
look only to the application actually submitted to it in
assessing its jurisdiction." Id. Hence, a court should look to
the arbitration award that is sought to be confirmed or vacated,
not to the underlying controversy. In a diversity case like this
one, if the application "shows that the contending parties are
citizens of different States (with over $75,000 in dispute),
then § 1332(a) gives the court diversity jurisdiction." Id. at
1316.

Although Badgerow provided no explicit guidance on
measuring the amount in controversy for a petition to vacate or
confirm an arbitration award, the decision casts doubt on the
demand approach, which appears to ignore the instruction to
"look only to the application actually submitted to" the federal
court -- in this case, the petition to vacate the Award -- in
determining subject-matter jurisdiction. See id. at 1314. For
this reason, several courts have declined to apply the demand

11

approach after Badgerow. See, e.g., Conmed Corp. v. First Choice Prosthetic & Orthopedic Serv., Inc., -- F. Supp. 3d --, No. 21-cv-1245, 2023 WL 157957, at *7 (N.D.N.Y. Jan. 11, 2023) ("[T]he 'demand' approach appears to be similar to the 'look through' approach that the Supreme Court held impermissible in Badgerow."); Mitchell v. Frattini, No. 22-cv-2352, 2022 WL 17157027, at *3 (S.D.N.Y. Nov. 22, 2022) (where petitioner sought to vacate or modify a FINRA award of $25,450, declining to "look through" the arbitration award "to find that the underlying arbitration involved an amount-in-controversy greater than $75,000"); see also Shenzhen Zongheng Domain Network Co. v. Amazon.com Servs. LLC, No. 23-cv-3334, 2023 WL 4993662, at *5 (S.D.N.Y. Aug. 4, 2023) (acknowledging the argument that "Badgerow prohibits th[e] Court from using the 'demand' approach," but declining to "decide this issue because under the award approach the amount in controversy is also satisfied"). But see Rising Star Inc. v. Amazon.com, Inc., No. 23-cv-778, 2023 WL 3597617, at *3 (S.D.N.Y. May 23, 2023) (applying both the demand approach and the award approach after Badgerow).

In this case, it is unnecessary to resolve the continuing legitimacy of the demand approach, because the jurisdictional amount is satisfied under the award approach.[4] That approach,

---

[4] The respondents locate a third approach beyond the demand approach and the award approach: the "vacate-and-remand" approach. According to the respondents, "when a petitioner seeks a vacatur of the award and a remand

which looks to the amount of the Award as the amount in
controversy, complies with Badgerow. See, e.g., Shenzhen
Zongheng Domain Network Co., 2023 WL 4993662, at *5 (using this
approach after Badgerow); Rising Star Inc., 2023 WL 3597617, at
*3 (same); Conmed, 2023 WL 157957, at *7 (same); Mitchell, 2022
WL 17157027, at *3 (same). The Elwells seek to vacate an award
of $67,917 in compensatory damages, plus 9% yearly interest
"from October 21, 2015 through and including the date the award
is paid." Award at 5. On August 26, 2022, the date the

---

for further arbitration proceedings," as the Elwells do, "courts look to
the amount to be re-litigated upon remand to determine the amount in
controversy." Remand Opp., ECF No. 6, at 8 (citing Wise v. Marriott Int'l
Inc., No. 06-cv-11439, 2007 WL 2200704, at *4 (S.D.N.Y. July 30, 2007)).
"The underlying reasoning" of this approach, as Judge Preska explained in
a pre-Badgerow case, "is that because the petitioner does not accept the
arbitrator's award as final, he seeks reopening of the arbitration
proceedings which could once again expose the defendant to liability for
the relief sought in the arbitration demand." Wise, 2007 WL 2200704, at
*4. The respondents argue that applying the vacate-and-remand approach in
this case complies with Badgerow, because the Elwells' request for "remand
back to FINRA for another chance to pursue millions of dollars" shows that
their petition "on its face shows that more than $75,000 is in
controversy." Remand Opp. at 8-9.

As an initial matter, the respondents appear to overstate the
difference between the demand and the vacate-and-remand approaches. Wise
looked to the original demand: "When a petitioner seeks a vacatur of the
award and a remand for further arbitration proceedings, th[e] Court looks
to the underlying amount claimed in the arbitration demand to determine
the amount in controversy." Wise, 2007 WL 2200704, at *4. But even the
respondents' version of the vacate-and-remand approach, which would
expressly "look to the amount to be re-litigated upon remand," Remand Opp.
at 8, may not comply with Badgerow. Badgerow teaches that federal courts
faced with petitions to vacate or confirm arbitration awards must limit
their jurisdictional review to the "controversy . . . before the court."
142 S. Ct. at 1314. The controversy now before this Court is whether the
Award issued to the Elwells by the FINRA arbitrators was lawful. The
Elwells' original demand is not before the Court, and neither is what the
arbitrators could award on remand if the Award is vacated. In any event,
as with the demand approach, it is unnecessary to resolve the propriety of
the vacate-and-remand approach.

arbitrators signed the Award, its total value was $109,800.39

($67,917.00, plus $41,883.39 in interest); on August 29, 2022,

the date that FINRA issued the Award, its value was $109,850.63

($67,917.00, plus $41,933.63 in interest); and, when fully paid

a month later, the Award totaled $110,251.50. At any of these

points, the amount of the Award exceeded the $75,000 threshold

in Section 1332.[5]

The Elwells argue that only the compensatory damages may be

included in the calculation because the diversity statute, by

its terms, excludes interest. The amount in controversy in a

diversity case must exceed "the sum or value of $75,000,

exclusive of interest and costs." 28 U.S.C. § 1332(a). "The

purpose of § 1332(a)'s exclusion of interest is to prevent the

plaintiff from delaying suit until the substantive claim, with

the accrued interest, exceeds the jurisdictional amount."

Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C., 53 F.4th 361,

365 (5th Cir. 2022); see also, e.g., State Farm Mut. Auto. Ins.

---

[5] The respondents also argue that the amount in controversy includes the forum fees assessed by the arbitrators. These fees, some of which the Elwells also paid, were payable directly to FINRA. See Award at 4-6. They are not properly considered in calculating the amount in controversy between the Elwells and the respondents. See Bruni v. Bader, No. 11-cv-3151, 2012 WL 13014934, at *2 (E.D. Pa. Mar. 12, 2012) (excluding from amount in controversy "forum fees assessed against defendants, which are not payable to plaintiffs"); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3712 (4th ed. 2022) ("It is well-settled . . . that the amount in controversy for jurisdictional purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce.").

Co. v. Narvaez, 149 F.3d 1269, 1271 (10th Cir. 1998); Brainin v. Melikian, 396 F.2d 153, 155 (3d Cir. 1968); 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3712 (4th ed. 2022) ("Wright & Miller"). Thus, interest generally is excluded "if it is only incidental to the claim the plaintiff is asserting or if it arises solely by virtue of a delay in the payment of an obligation." Wright & Miller § 3712 (collecting cases); see also Brown v. Webster, 156 U.S. 328, 329-30 (1895).

On the other hand, interest is not excluded where it is an "essential ingredient" in the principal claim. Brown, 156 U.S. at 330; see also Cleartrac, 53 F.4th at 366 (interest included "where it is a basis for the suit itself"); Wright & Miller § 3712 (collecting cases). For example, where "interest is owed as part of an underlying contractual obligation, unpaid interest becomes part of the principal for jurisdictional purposes." Transaero, Inc. v. LaFuerza Area Boliviana, 24 F.3d 457, 461 (2d Cir. 1994). Similarly, in a suit to enforce a judgment, interest included in the judgment "merges into the judgment," such that "the amount in controversy in such an action[] is the amount of the judgment." Richie v. Richie, 186 F. Supp. 592, 594 (E.D.N.Y. 1960) (amount in controversy exceeded $10,000, the statutory threshold at the time, where plaintiff sued to recover on an alimony judgment that had awarded her $9,600 plus interest, for a total award of $10,785).

15

"It is only interest <u>on</u> the judgment that may not be included to enhance the amount in controversy." <u>Id.</u> (emphasis added); <u>San Juan Hotel Corp. v. Greenberg</u>, 502 F. Supp. 34, 35 (E.D.N.Y.) (amount in controversy to recover on judgment included pre-judgment interest, where prior judgment provided for interest), <u>aff'd without opinion</u>, 646 F.2d 562 (2d Cir. 1980); <u>Phoenix Scotts-Sports v. Kadish</u>, 321 F. Supp. 556, 557 (D. Alaska 1971) (same). As the Court of Appeals for the Fifth Circuit recently explained, pre-judgment interest "can be fairly said to constitute an essential ingredient in the principal claim" in a judgment-enforcement case, because it "is an accrued component of the judgment sued upon at the time the claim to enforce the judgment arose, and because pre-judgment interest's value does not depend on the passage of time after entry of the . . . judgment." <u>Cleartrac</u>, 53 F.4th at 367 (endorsing the view of the "majority of district courts" that "distinguish between pre-judgment interest and post-judgment interest, including the former in the amount in controversy but excluding the latter").

Although these judgment-enforcement cases did not involve arbitration awards, their reasoning applies to the calculation of the amount in controversy in this case. In making this calculation, <u>Badgerow</u> directs the Court's attention to the Elwells' petition to vacate the Award. The Award included pre-

16

award interest. Indeed, the Elwells challenge both components of
the Award -- not only the compensatory damages, but also the
date from which interest should run, which the Elwells say was
unmoored from anything in the record. Thus, the arbitrators'
award of interest is an "essential ingredient in the [Elwells']
principal claim," Brown, 156 U.S. at 330, such that the amount
in controversy includes both the award of compensatory damages
and the award of interest.

Moreover, although interest should be excluded when it
"arises solely by virtue of a delay in payment," Cleartrac, 53
F.4th at 366-67, that concern is not present here. On August 26,
2022, the date the arbitrators signed the Award, the Award
totaled $109,800.39; that figure grew to $109,850.63 three days
later, when FINRA issued the Award. In other words, including
only pre-award interest in the calculation, the amount that the
Elwells could seek to vacate -- that is, the amount in
controversy -- always exceeded $75,000. There was no way for the
Elwells to delay bringing this suit "merely to accumulate the
necessary amount for federal jurisdiction." Brainin, 396 F.2d at
155.[6]

---

[6] The Elwells cite two out-of-Circuit decisions rejecting the
inclusion of interest when calculating the amount in controversy after an
arbitration. Neither case is persuasive. In Bull HN Information Systems,
Inc. v. Hutson, the First Circuit Court of Appeals looked to the "amount
at stake in the entire arbitration" to find that the $75,000
jurisdictional amount was satisfied without including interest. 229 F.3d
321, 329 (1st Cir. 2000). In dicta, the court explained that interest on

17

Because the total amount of the Award exceeds $75,000, regardless of the millions of dollars the Elwells demanded in the arbitration, and because the requirements for diversity jurisdiction are otherwise satisfied, the Court has subject-matter jurisdiction over this dispute. Therefore, the motion to remand is **denied**.

### III.

Because there is subject-matter jurisdiction, the Court will address the Elwells' petition to vacate the Award and the respondents' cross-motion to confirm the Award. For the reasons that follow, the Award should be confirmed.

### A.

A party seeking to vacate an arbitration award under the FAA faces a formidable task.[7] "To avoid undermining the twin

---

the arbitration award could not be included because it was not "an integral part of the damages at the time the [petitioner's] claim arose." Id. at 329-30. This Court follows Badgerow and looks to the amount of the Award, not to the amount at stake in the underlying arbitration. Because pre-award interest is an essential ingredient in the Elwells' claim to vacate the Award, that interest is part of the amount in controversy.

Mio DC, LLC v. Petal Management, Inc., No. 09-cv-380, 2009 WL 10720157 (D.D.C. July 8, 2009), also is not relevant. In Mio DC, the issue was the inclusion of fees and expenses, not interest, and the court followed the demand approach, not the award approach followed in this case. Id. at *3.

[7] In their petition to vacate, originally filed in the New York State Supreme Court, the Elwells sought vacatur under both the FAA and New York state law. The Elwells do not dispute now, however, that the FAA, rather than New York law, applies. See Barbier v. Shearson Lehman Hutton Inc., 948 F.2d 117, 120 (2d Cir. 1991) ("The FAA applies when there is federal subject matter jurisdiction, i.e., diversity jurisdiction, and when the contract calling for arbitration 'evidences a transaction involving interstate commerce.'" (quoting 9 U.S.C. § 2)); O'Connor-Roche v. RBC Cap. Mkts., LLC, No. 22-cv-1467, 2022 WL 17798116, at *3 n.3

goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation, arbitral awards are subject to very limited review." Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 588 (2d Cir. 2016). "[T]he showing required to avoid summary confirmation of an arbitration award is high, and a party moving to vacate the award has the burden of proof." Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp., 103 F.3d 9, 12 (2d Cir. 1997); see First Cap. Real Estate Invs., L.L.C. v. SDDCO Brokerage Advisors, LLC, 355 F. Supp. 3d 188, 193 (S.D.N.Y. 2019).

Section 10(a) of the FAA sets forth four specific grounds for vacating an arbitration award: (1) "corruption, fraud, or undue means" in the procurement of the award; (2) "evident partiality or corruption in the arbitrators"; (3) specified misconduct by the arbitrators; or (4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(1)-(4). The Elwells do not rely on any of these bases. Instead, they seek vacatur on another, "judicially-created ground": that the arbitrators

---

(S.D.N.Y. Dec. 19, 2022) ("[T]he Federal Arbitration Act governs this motion because the underlying matters, breach of contract, negligent misrepresentation, and other equitable claims, affect interstate commerce.").

"exhibited a manifest disregard of law." Jock v. Sterling
Jewelers Inc., 646 F.3d 113, 121 (2d Cir. 2011).

"A litigant seeking to vacate an arbitration award based on
an alleged manifest disregard of the law bears a heavy burden,
as awards are vacated on grounds of manifest disregard only in
those exceedingly rare instances where some egregious
impropriety on the part of the arbitrator is apparent." T.Co
Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339
(2d Cir. 2010). That impropriety requires "more than error or
misunderstanding with respect to the law, or an arguable
difference regarding the meaning or applicability of laws urged
upon an arbitrator." Id. (collecting cases). Rather, arbitrators
act in manifest disregard of the law if they "knew of the
relevant legal principle, appreciated that this principle
controlled the outcome of the disputed issue, and nonetheless
willfully flouted the governing law by refusing to apply it."
Seneca Nation of Indians v. New York, 988 F.3d 618, 626 (2d Cir.
2021).

This is not one of the "exceedingly rare instances" where
an arbitration panel acted in manifest disregard of the law.
T.Co Metals, 592 F.3d at 339. The Elwells argue that the
arbitration panel erred in awarding a sum of damages not
explicitly contemplated by the parties and, allegedly, without
evidentiary support. Pet. ¶¶ 30-31. But the Elwells cite no

authority that limits the calculation of awards to theories
proposed by the parties. To the contrary, arbitrators may award
the damages they believe are due based on the evidence before
them. <u>Tully Constr. Co. v. Canam Steel Corp.</u>, 684 F. App'x 24,
28 (2d Cir. 2017). "[T]here is no requirement that the amount of
the arbitration award correspond to any claimed amount,
particularly when the award granted is less than the amount
requested." <u>Singh v. Raymond James Fin. Servs., Inc.</u>, No. 13-cv-
1323, 2014 WL 11370123, at *3 (S.D.N.Y. Mar. 28, 2014). As for
the Elwells' argument that the arbitration panel wholly
disregarded the evidence, this Circuit "does not recognize
manifest disregard of the evidence as proper ground for vacating
an arbitrator's award." <u>Wallace</u>, 378 F.3d at 193. Rather, the
Award should be enforced, "whatever the weight of the evidence
considered as a whole, if a ground for the arbitrator[s']
decision can be inferred from the facts of the case." <u>Id.</u>
Otherwise put, the Award should be enforced "if there is a
<u>barely colorable justification</u> for the outcome reached." <u>T.Co
Metals</u>, 592 F.3d at 339. "Only this approach to the evidentiary
record is consistent with the great deference which must be paid
to arbitral panels by federal courts." <u>Wallace</u>, 378 F.3d at 193.[8]

---

[8] Because the Elwells point to no specific rule of law that the
arbitration panel ignored, several of the cases they cite are inapposite.
<u>See</u> <u>Gross v. HSBC Sec. (USA) Inc.</u>, No. 21-cv-8636, 2022 WL 375232, at *2-3
(S.D.N.Y. Feb. 8, 2022) (vacating arbitration panel's denial of an
uncontested petition for expungement of a Form U-5 in seeming violation of

In this case, the damages award can be inferred from the evidence before the arbitration panel. The Elwells challenged the suitability of certain securities investments among hundreds of investments made on their behalf. Yet, when pressed by the arbitrators, the Elwells' expert conceded that there were suitable investments in the Elwells' accounts but that he had not segregated the suitable investments from the allegedly unsuitable ones, instead applying his damages formula to every investment to generate the Elwells' well-managed portfolio models. See Hearing Tr. at 1765-66. Against this testimony, the respondents' expert opined that the Elwells' investments were suitable. It is entirely plausible that the panel did not rely on the Elwells' theories of recovery, but instead chose to award

_____

a specific FINRA rule governing expungement); McQueen-Starling v. Unitedhealth Grp., Inc., No. 08-cv-4885, 2010 WL 768941, at *6 (S.D.N.Y. Mar. 8, 2010) (vacating arbitrator's finding that the petitioner was not a victim of retaliation in seeming contradiction of uncontested facts establishing retaliation under the New York City Human Rights Law and the New York State Human Rights Law).

The Elwells also cite an Eastern District of Virginia decision in which the court remanded a case for arbitrators to explain how they reached an award of compensatory damages, which the court concluded did "not correspond to any theory of liability that the Court can apprehend, much less the two principal theories of liability articulated by the Claimants at the arbitration." Interactive Brokers LLP v. Saroop, 279 F. Supp. 3d 699, 707 (E.D. Va. 2017). The Elwells discuss Interactive Brokers only in reply, which is reason enough to disregard the discussion. See Clubside, Inc. v. Valentin, 468 F.3d 144, 159 n.5 (2d Cir. 2006) (Sotomayor, J.). In any event, Interactive Brokers is distinguishable. Unlike in that case, there is a colorable justification for the Award in this case, such that the Court could "theorize how calculating damages in the way done by the arbitrators would be proper." Interactive Brokers, 279 F. Supp. 3d at 708. In this Circuit, that is all that is required to enforce the Award. See T.Co Metals, 592 F.3d at 339.

a much smaller amount based on select investments the panel deemed to be unsuitable. Indeed, the arbitrators could have rejected the testimony of the Elwells' expert entirely, accepted the testimony of the respondents' expert, and declined to award any damages to the Elwells. That the arbitrators chose to award only a small amount of the damages sought by the Elwells does not indicate at all that the arbitrators manifestly disregarded the law. See, e.g., Koch Oil Co., S.A. v. Transocean Gulf Oil Co., 751 F.2d 551, 554 (2d Cir. 1985) ("It is settled law in this circuit that arbitrators may render a lump sum award without disclosing their rationale for it, and that when they do, courts will not inquire into the basis of the award unless they believe that the arbitrators rendered it in 'manifest disregard' of the law or unless the facts of the case fail to support it. Such limited review is necessary if arbitration is to serve as a quick, inexpensive and informal means of private dispute resolution."); Tully Constr. Co., 684 F. App'x at 28 ("There are many reasons that the arbitrator might have decided to award a certain amount of each claim . . . . [V]ariation in the credibility and amount of evidence of damages could have resulted in more or less being awarded for certain claims.").[9]

---

[9] The Elwells also challenge the arbitrator's decision to have interest run from October 21, 2015. See Pet. ¶¶ 23-24. But the record adequately justifies this decision. In their second alternative "well-managed portfolio" calculation, the Elwells themselves asked that interest begin to run from October 29, 2015, the date the Elwells transferred their

Ultimately, it is not for the Court to reconstruct how exactly the arbitrators reached their conclusion. Because the Elwells have failed to show that the arbitrators ignored any governing law, "this Court 'must accept the award without attempting an analysis of the arbitrators' purported reasoning process.'" Barzelatto v. Spire Secs., LLC, No. 19-cv-6238, 2019 WL 8889865, at *10 (S.D.N.Y. Nov. 5, 2019) (quoting Koch Oil, 751 F.2d at 554). The record indicates a colorable justification for the panel's award. Accordingly, the Elwells' motion to vacate is **denied.**

### B.

Raymond James and Pimental cross-move to confirm the Award.

Under the FAA, "any party to [an] arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." 9 U.S.C. § 9. "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." First Cap. Real Estate Invs., LLC, 355 F. Supp. 3d at 196; see L'Objet, LLC v. Samy D. Ltd., No. 11-cv-3856, 2011 WL 4528297, at *3 (S.D.N.Y. Sept. 29, 2011). As explained above, the Elwells have not

---

accounts from Raymond James to Wells Fargo. Pet. ¶ 13. However, documents reviewed by the arbitrators showed that the Elwells actually opened their Wells Fargo account on October 21, 2015. See Sullivan Decl. ¶¶ 13-14.

provided any grounds to vacate, modify, or correct the Award, and there is a colorable justification for the Award. Therefore, the respondents' cross-motion to confirm the Award is **granted**, and the Award is **confirmed**.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed above, the arguments are either moot or without merit. For the foregoing reasons, the Elwells' motion to remand is **denied**. The Elwells' motion to vacate the Award is **denied**. The respondents' motion to confirm the Award is **granted**.

The Clerk is respectfully directed to close this case and all pending motions.

**SO ORDERED.**

Dated:      New York, New York
            August 10, 2023

                                    _____
                                    John G. Koeltl
                                    **United States District Judge**

25